John Q. Kelly v. Village of Kenilworth And by the way, you have to figure out how you're dividing your 15 minutes. Yes, sir. There you go. Good morning, Your Honor. May it please the Court, I'm Matt Topek. I represent the appellant plaintiff, FOIA requester John Q. Kelly. Now, I would suggest to you, we know the facts of the case. It's a FOIA case. They filed for an exemption for ongoing criminal investigation. Now, arguing the case, we don't need to know the facts. Sure. And I think, Your Honor, this is really a legal question more than a factual question. The appellees contend there is not a single word on a single page of their records about the 52-year-old Valerie Percy murder that can be released without obstructing the investigations they claim to be conducting, including even leads that were investigated and eliminated decades ago. That contention is beyond implausible, and to support it, appellees ask this Court to ignore years of Illinois substantive and procedural FOIA case law and the plain text of our statute, all in a manner that will severely hamper the public's ability to hold law enforcement accountable, in this case, and in countless others. Not surprisingly, courts in several other states who have faced this issue have similarly rejected blanket secrecy rules for all records in an open investigation. This Court should uphold and apply the text of our statute and our well-established body of case law and leave appellees' blanket secrecy rule for the General Assembly to pass, and the Governor decide if they are so inclined to do. There are two principles central to this appeal. First is that the Government must prove exemptions by clear and convincing evidence. That can be done either through affidavits that are subject to adversarial testing... When you say adversarial testing, what do you mean? I mean that it can be tested by the counterparty to the case. How? Well, one way that that can be done is either they can be done at a little more level of generality by removing any specific facts that are at issue. Another alternative is there could be a closed hearing in which I, as the attorney for the requester... Do you have a single case that authorizes someone to look at it during an in-camera inspection other than a judge? Your Honor, are you talking about an in-camera inspection of the records or a sealed affidavit? Of the records and the sealed affidavit if it discloses what's in the records over which exemptions have been claimed. Well, the Vaughn case makes clear that adversarial testing means testing by the adversary. Well, you're saying it's testing by the adversary, but it doesn't. Vaughn does not say you get to look at the records or you get to look at an affidavit that contains the information over which an exemption has been claimed. It says that if the government is going to rely on affidavits, the affidavits have to be subject to adversarial testing. Well, there's no question that you can cross-examine the affidavit. There's no question about that. But Vaughn does not say you get to know what the exempted material is in order to test the affidavit. In other words, let's assume that they had a suspect by the name of John Jones, and they don't want to disclose the name of John Jones. They sign an affidavit to the court that says, we have just interviewed a person of interest, his name is John Jones. We don't want his name disclosed. He may then change his story, et cetera and so on. The judge sees the affidavit, redacts John Jones' name from it, and you get to cross-examine them on whether they have an individual over which their investigation continues. But you don't get John Jones' name. Well, Your Honor, respectfully, they didn't just redact John Jones' name. They go on for paragraphs after paragraphs. That's a different issue. The question is, did the redacted document contain enough information for you to conduct a reasonable cross-examination? But your contention that you're entitled to see exempted material in order to test the affidavit is just unsupported by anyone. I couldn't find a case normal. I couldn't find a federal case. Well, honestly, Your Honor, I haven't seen hardly any cases in which a sealed affidavit was submitted in a case. It's done in federal cases when there's national security issues and only very reluctantly. So the issue really doesn't come up very often because typically what happens is the affidavit is done in a level of abstraction that allows for me, even if I don't know that it's John Jones, I can know it's a suspect and I can see the details and I can push back on it. Because whether it's John Jones or anybody else isn't really what matters. Yeah, but if you see the details, you can figure out who John Doe is. Well, potentially that could be the case here or it could be the case there. But over every word in every document, over 20,000 pages in this case, including leads that they discounted in the late 1960s, there just is – I mean, I don't know what they even argued to say that when we discounted this lead and that lead 50 years ago, how it would interfere with the investigation today. There's no explanation at all how that would be the case. So I'm left in a position which is exactly what Ron was attempting to avoid, where the government makes a blanket exemption claim and the person on the other side is left really unable to defend it and then just sort of dumps it on the court to try to resolve. So what could have happened here, what would have been consistent with what Illinois Education Association said, what this court has said today, what this court has done in the National Association of Criminal Defense Lawyers, is that we start from the presumption of disclosure. They have to prove that the records are actually exact. They can use an affidavit, but there's a strong preference also for in-camera inspection of the records, which we concede we are not allowed to attend the in-camera inspection of the records. But that provides a check upon the affidavits. The problem here is that the circuit court only did an in-camera review of the most recent records, which really only gets at the question of whether there's an ongoing investigation. It is not representative of the other 95 percent of the pages in the file, especially things, again, that were discounted in the 1960s. I'm sorry. So it sounds like what you're saying is what the judge did, the things that he looked at, that was fine. You didn't have to see that. But the judge needs to see every single sheet. Well, yes. I mean, this court has said indeed there should be an in-camera review of each document. You wanted the trial judge to review 20,000 documents. No, it's 25,000. Is that what you wanted? Well, we would certainly owe it to a representative sampling, which we did not do. That's a little different than suggesting the judge has to review every document. Well, I mean, we're going from what the case law has been to date, which has been. . . Why not simply a Vaughan index? Well, that potentially. . . A fairer Vaughan index. And then if their claim of exemption satisfies the exemption for each of the categories listed in the Vaughan index, end of story. As long as we're specifically addressing the categories in a way that allows for adversarial testing, then, yeah, that would be an approach that would allow us to at least test what happened. But all we had was an in-camera review of a completely unrepresentative sample of the records. And so the circuit court seems to have come to the conclusion, based on looking at those records and the corresponding portions in the affidavit, that there is an actual ongoing investigation. But then the circuit court did not go to the next step and say, at least category by category, how is release of this record going to interfere with the investigation? And when the circuit court actually did do that for the medical examiner records, which were more modest in number, through a long process, we ended up with an in-camera inspection of all of those. There were records that the circuit court filed. Yes, these records can be released, and they tended to be old records about leads that are historically important and interesting, but would in no way interfere with the investigation. So we would suggest that the case should be remanded, and the court should at the very least have the parties seeking secrecy disclose the very specific categories of records. So far in the affidavits, they're a little too general, I think. And then try to explain consistently how would that interfere with the allegedly ongoing investigation to have those records. These are the ten categories. Didn't they have records that were nothing? I think it was the one I recall was seven, Your Honor, at least in Mr. Moe's affidavit. But they're not going to reflect time periods. It's not clear whether, you know, I have his affidavit here that indicates ten categories of records. Ah, yes. Correct. Okay, so investigative reports. Well, I mean, that's a little vague. What kind of investigative reports from what time period? I mean, certainly there should be things from the 1960s and 70s that are no longer relevant. People who they investigated who were since deceased. I mean, at this point, anybody who was 20 years old then was already in their 70s. So, you know, again, I think overall the approach was just too heavy-handed and too absolute. And what the court didn't do was engage in the kind of individualized assessment that should be done, again, at least at the categorical level. I won't go through the cases in too much detail then, Your Honors. But, again, I think consistently this Court and the Supreme Court and federal courts have applied a document-by-document or at least a categorical assessment and have not come to the conclusion that simply because an investigation is ongoing that all records can be withheld. And we cited a number of cases from other states as well. Here, the circuit court relied really on two things,  The first was the Dickinson case or Dickerson case from the Sixth Circuit, which was a split decision with a dissent from a judge who did go on to be shortlisted for the U.S. Supreme Court, who said this is really the worst of both worlds. You've created a situation where you're giving the court an unrepresentative sample of documents and then trying to apply the exemptions over everything. And that's really precisely what we have here. And then there's the Brown's Chicken case that the circuit court relied on, which is not a FOIA case at all. It has to do with discovery privileges in which courts have far more discretion than they do under the statute. It requires a balancing task between the public benefit of secrecy and the private need, or here we would say the public need for disclosure that the circuit court did not engage in. And we already have extensive FOIA case law on the pending investigation exemption going all the way back to the Bodine decision in 1989, which involved an even broader exemption than we have today. The circuit court believed that the FOIA exemption was simply a codification of the common law privilege when, in fact, the privilege was recognized in 1992, which was about a decade after FOIA had been enacted. And it was based on this idea that courts should defer to the executive in questions under the investigatory privilege in discovery when FOIA cases consistently have always held there is no deference to the government, that there is a presumption of disclosure and the government must prove its exemptions by clear and convincing evidence. If this court allows law enforcement to impose total secrecy over the investigation of a 52-year-old murder in an affluent community, it will open a secrecy floodgates everywhere. You keep saying a 52-year-old murder. The exemption is for an ongoing investigation. It doesn't make any difference that the murder is 52 years old. The question is, is the investigation ongoing? And that was the question at all. Right. And that is the question. In Dane, this court was suspect of a 17-year-old case continuing to be investigated. And, yes, it's true that one person had been convicted of their crime, but the police said there may have been other people. So the longer that it goes on, the more – I'm not saying it couldn't still be an ongoing investigation. I have no way of knowing because I don't know any – even without knowing John Jones' name, I don't know anything at all about what it is they claim to have been doing other than a very high level of generalizing. The judge said it. The judge said it? Okay. The judge said it. Right. I understand. But in terms of the affidavit, to the extent the courts rely on the affidavit, I'm not in a position to respond to that. The documents themselves, the law would allow the court to do that in camera. The point about it being a 50-plus-year-old murder is that it does become a little more questionable. Is this really an active and ongoing investigation? And I'm not suggesting that it couldn't be, but I'm saying that I'm in no position to know whether it is or isn't. If you've looked at the full unredacted affidavit and the documents, then certainly you're in a better position than I am to say whether it is ongoing. But, again, even if it is ongoing, the jury – I want to be very, very clear and make a very interesting observation. These examinations of documents or categories of documents along with the affidavit is necessarily conducted by the court without benefit of criticism or illumination by a party with the actual interest in forcing disclosure. And that's necessarily the way this works. You are entitled to have an affidavit that supports their claim of exemption of every one of their category of documents. But the affidavit cannot contain or should not contain the actual material over which they claim the exemption. So they don't have to tell you John Jones' name. That's all they have to tell you is we've questioned a person of interest two months ago. But they haven't done that. They've gone well beyond redacting John Jones' name. But the question is, did they disclose that to the judge? Well, and, again, I'm not in a position to really say that. If they were to disclose that they questioned a person of interest two months ago, I suppose that would tip the person of interest if you made that public, wouldn't it? Potentially it could. I mean, again, I haven't lost that. And that could be if it's an ongoing investigation. Well, sure. And that's a situation where, again, the in-camera inspection would address it, but it wouldn't answer the question of what about the person from 50 years ago and so on. But that's a different issue. And we have said from the very beginning, we acknowledge that if it is an ongoing investigation, there may be some categories of records that can be properly withheld. It's the sort of blanket rule here that is really the fundamental problem with the circuit court's approach. Well, then are you challenging the ones that the judge did review and that the judge said show an ongoing investigation? Well, I mean, if the court has reviewed those documents and concurred with the circuit court's view of those documents, then I think we're at the end of the road of what realistically we can do about those. I don't know how much time you have left, but I'm the recipient of the request. I'd like you to address that. Sure. So this is language that was added to the statute in 2009, and there doesn't really seem to be any specific legislative history. But it very clearly says that if someone's going to claim a pending investigation exemption, it's only the investigation by the agency that's the recipient of the request. This is only an issue for one public body here, and that is the ISP sort of investigative unit as opposed to the forensics unit. This court has held that each department is a separate public body. And so as to the ISP, we made the request. They were prepared to release the records until the very last minute. Their filings made clear that they closed their investigation in 2002. They're not involved anymore in the investigation. They're not conducting any wrongful investigation. The question is whether the documents that they generated when they were involved in the investigation, revealing of those documents would impede the present investigation that Kenilworth is carrying on. And you can't do by indirection what you couldn't do by direction. If you can't get it from Kenilworth, you can't get it from state police. I think the only way you can come to that conclusion, Your Honor, is to just disregard that language in the statute, which specifically says that. It doesn't make sense. There's no question Kenilworth claims the exemption, but they claim the exemption for the contents of their file. If the contents of their file contains a document created by the state police and the state police still have a copy of that document, it occurs to me it only makes sense that their claim of exemption also covers the state police. Your Honor, this Court and other courts in the state have consistently not engaged in what seems like sensible rule. If we do that, I would be happy to do that, because there are a number of exemptions I would be happy to bring before you and suggest there is no good reason for an exemption to exist, but nonetheless the exemption exists. So the statute says what it says. It says that it must interfere with the pending investigation by the agency that is conducting the criminal investigation. And so if that agency is not conducting the criminal investigation, then the records wouldn't apply. That's not quite what it says. Now, I don't know that you're going to need to reach that question, because all this, at least at this point, what the circuit court looked at was records from the most recent time period. I think we do have to answer that question, because you've asked for the Cook County State's Attorney's Office records, Illinois State records, medical examiners' records, and they have claimed exemptions. And I think what they presented to the judge says the Illinois State police has done something maybe in 2015 or maybe even 2016, and the State's Attorney's Office has said that they are continually assisting Kenilworth. I did have a question regarding that. If I may just briefly clarify that, because I think it will simplify things. As to the State's Attorney's Office, as to the medical examiner, as to the ISP forensics division, we don't dispute that they are involved in the pending investigation. So it is only an issue for the portions of ISP who said, we closed our investigation in 2002, that that part of ISP doesn't have any pending investigation. They're cooperating, but they're still cooperating. Well, if you sort of import the activities of the forensics division to ISP as a whole, then yes. If you treat them separately, then no. Then the ISP investigations division has already closed its investigation. I'm sorry. Is there more than one task force? I read in the record the Percy Homicide Task Force and the North Regional Task Force. Are they one and the same? I don't know the answer to that question. I suspect my colleagues know that. I'm sorry. Please let me know. The other thing is in the State's Attorney's Brief, it says they filed a motion for summary judgment. I couldn't find that in the record. Was there a motion for summary judgment? By the State's Attorney's Office? By the State's Attorney's Office. There should be. We filed a summary judgment motion. They filed a response. I believe they filed a cross motion. That's what I was looking for. I know they filed a response, but I couldn't find their motion. Counsel, thank you. We'll give you some more time. Great. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Chris Murdock. I represent the village of Kenilworth. In response to your question, to my knowledge, there's only one task force. It's the NORTAF task force. It's the Northern Suburban Major Crimes Task Force. We're going to split our time, so I'd like to focus very quickly on a couple of key issues that the village thinks are important. First of all, in support of its motion for summary judgment, the village submitted the declaration of Police Chief Miller. Unlike most of the cases cited by the appellant, this declaration was extremely detailed. The trial court said that it was compelling. It was incredibly detailed. And it left her with no doubt over three material facts. First, that there is an ongoing and active investigation in the murder of Valerie Percy. Second, that the release of the records requested would obstruct that investigation. And third, that all of the appellees are participating in that investigation. The plaintiff failed to raise any genuine issue of material fact with regard to these issues. And so on the record below, the entry of summary judgment was proper. Well, let's slow a little bit. You raised, the chief raised ten categories of documents in paragraph six. Yes. Of his declaration. Now, as to some of these documents, it occurs to me that if they had questioned somebody and totally eliminated them as a suspect 50 years ago, why would you claim an exemption on that? And how does the chief's declaration cover that circumstance? Well, I think it covers it in a couple different regards, Your Honor. That's a good question. First, when the appellant uses a phrase, a dead lead, or says that a suspect has passed away or is no longer an active suspect, that does not mean that the information contained in the interviews of that suspect or the investigation of that suspect does not remain germane to the overall investigation. In which case the judge would have to look at the interviews of those suspects. Well, the judge could or the judge could take the specific examples cited in the Miller declaration of how information from the 1960s relates to the current investigation. Well, information from the 1960s may well relate to the current investigation. But that wasn't my hypothetical. You had a suspect 60 years ago. You eliminated that suspect. Another suspect would say he's dead. And so why not? Why not let him in? And not say what he said. We can't reject what he said. Well, I'm not exactly sure what you would ask us to review. I mean, the case law kind of says that even if there's articles, there's and and plus, and we discounted this person, give them that. I mean, it really doesn't say anything, but they're entitled to what's left. Well, let me give you a couple different answers to that question. Before you answer me, did anyone review all of the records that Kenilworth has from 66 until this request? Because I didn't see that anywhere in here. The village and the police department reviewed its records before it responded to the FOIA request, but the court did not. The court requested a group of officers. I mean, in Miller's affidavit, did he say he reviewed all of the records? I don't know if he said that in his affidavit. I can tell you that I know Chief Miller is intimately familiar with the entire file. In response to the FOIA request, I don't know if there's anything in the record where he affirms that he went page by page through the record. He did not have a young attacker in front of him. He did not make that contention. He said he was responsible for the investigation. He's the FOIA officer, and he's responsible for their investigative file relating to the murders. But he did not say that he examined them. He said in paragraph 5 that there were 20,000 pages of record. I take it there are a few more than that. There are records. There's a 20,000-plus, and then there are records in the possession of the other appellees. But in response to this question about why all of the documents, release of any of the documents would obstruct the ongoing investigation, as Chief Miller explains in his affidavit, and I'm sure you're aware, there's value in the confidentiality because it helps him vet suspects. It helps him disprove false confessions. It helps him investigate new leads. And he gave examples of how they've done that, exactly in this case, throughout the course of the investigation. In response to the quote-unquote dead lead, he also explained how some leads, which may have appeared dead at one point, when then connected to lead 15, for example, is suddenly connected to lead 235. And lead 15, which several years ago appeared to be irrelevant, is suddenly significant and comes back to life. For example, in this case, if Kenilworth had received a FOIA request five or ten years ago and the appellant's rules applied, the village could have been forced to release the information which is now at the heart of its current investigation. I think conceptually, and without getting too esoteric, one of the problems we have here is a relative explanation of time. If an investigation is only six months old, I think everyone would agree that the entire file should be dealt with. We're not impressed by the fact that it's 50 years old. The question is, is it an ongoing investigation? And then, have you sustained your burden of establishing exemption over each of the ten categories? Why is the diagram of the Percy home exempt from disclosure? Did the house change? Somebody move a wall? I think if you review the Miller Declaration, the significance of the layout of the house and the location of the victim's room is important to the current investigation. That's not public knowledge? Well, I don't know what's public knowledge with regard to the diagram of the house. I mean, the house is the house. It has rooms, a diagram of the house, living room, dining room. It's in kennel wards, probably as a form of parlor. Part of the problem with the – it is not – I think there's two things that should be considered here. Number one, you know, does that seem like an insignificant fact or an insignificant piece of evidence? It could, except that when you have a high-profile murder investigation and that is suddenly released, the recollections of the current suspects could be refreshed. They're going to be vitally interested in any information that's released. Whoever the village is talking to now may not recall the layout of the house, but if suddenly they get a floor plan and they look at it because they want – they're vitally interested in this case and it has a lot of publicity and is subject to a FOIA lawsuit, then that could – that would obstruct the investigation because now suddenly the witness has something to go on, which he didn't previously. So I wanted – So I suppose then you advocate for what your opponent says is not the law and that's a blanket exemption? No, I – well, first of all, I think each of these cases have to be evaluated on a case-by-case basis. Well, it would be the same thing for any murder. Well, it depends on what the record shows, Your Honor. And in this case, you know, the judge reviewed the highly detailed affidavits. Remember, this is – all of the other appellate, they were all conclusory affidavits and we reviewed those and we gave the judge chapter and verse. And so she has highly detailed affidavits of what's going on and the chief's explanation of why release of information would obstruct the current investigation and then she made a finding of fact based upon that record. Now, she ordered certain of the documents in the possession of the medical examiner turned over, didn't she? I believe that that is correct. But if you have copies of those documents, you get to claim an exemption over them. Is that right? I do. I believe that that is the law, Your Honor. That makes no sense. Well, under – I believe that under Twin Cities, this is a relatively settled law. One agency can assert an exemption over documents in the – There's no question one agency can assert it. But if there is an autopsy report that has already been released to the public and the medical examiner hasn't released it, of what benefit is your exemption over the copy you have? Well, the counsel for the medical examiner can speak to this in a little bit more detail, but I do not believe that the medical examiner – first of all, my recollection is that the appellant did not ask for the autopsy report. I only used the autopsy report for an example. I'm talking about the documents that the judge ordered the medical examiner to release. To the extent you have copies of those same documents, why would you have an exemption over them if the plaintiff has already gotten the copies? Why couldn't he get them from you too? I'm not sure why he would want them from us. Why would he want them? That's not the question. He's trying to get rid of your blanket exemption because there's things that you can't get rid of. You're giving a blanket exemption over everything, including the documents he's already got. Well, I'm thinking, Your Honor, that in this case we established our right – we established the burden – we carried our burden of establishing that the release of materials in our file would obstruct the current investigation. The question is, did you establish your burden on all 10 categories? That's the question. Well, the trial court believes that we did, Your Honor, and she was the one who reviewed the affidavits and the in-court documents too. Okay. What else have we got before your co-counsels get up here? Well, I think that the – we've discussed the recipient of the request. We've discussed the entire scope of the document. I would urge the court – I spend a lot of time on the recipient of the request. That's not a good argument, so just leave it at that. I would urge the court to focus on the declaration of Chief Miller. He explains the several legal and factual bases for why none of these documents can be released. Okay. Thank you. Thank you. Good morning, Your Honors. Assistant State's Attorney Kristin Duffy on behalf of the Cook County State's Attorney's Office as well as the Cook County Medical Examiner. Your Honor, if it's okay, I'd like to clarify quickly about the task force. There is a North Suburban Task Force which handles major crimes in the northern suburbs. There is also a specific Percy Homicide Task Force that was created in 2014, and as you know – It's ongoing. I'm sorry, and it is ongoing and currently active. That is spelled out in ASABC's affidavit as well as what's one of the things that the trial court relied on in its decision. Also, with regard to finding the State's Attorney's responses, Your Honor, those can be found at the right there on page C-345-90 and C-397 for the medical examiner. Your Honor, the Cook County State's Attorney's Office and the medical examiner have sufficiently demonstrated there is an ongoing investigation here. The court specifically looked at the affidavit that was submitted by the supervisor of the cold case unit, Tom Biese, where he laid out in specific detail the history of this investigation. He laid out the current state of the investigation. He also detailed the establishment of the 2014 Percy Homicide Task Force, and those are all things that the trial court considered and determined there was, in fact, an ongoing investigation in this case. We believe that the court probably relied on the cases of Brown's Chicken as well as Dickerson v. the Department of Justice. Let me ask you a question. In your affidavit, did you create categories of documents that you have in your possession? We did spell out eight different types of documents that are there. And you believe your affidavit covers all eight of the categories? Yes, we do. It goes from investigative records as to notes of the investigators as to different documents that were given by other agencies that are contained within our files. Is investigative records a sufficiently specific category to allow someone to test that by cross-examination of the affidavit? Investigative records are all filed. That's true, Your Honor. Specifically, I think that it's notes of the investigation as it proceeds. So those would be the notes of the ASOs or the other exemptions as well that would cover that. However, when taking all of those things together, it's a way to judge the veracity of any confessions that are taken. It's a way to protect the witnesses. It's a way to protect the law enforcement agencies, their procedures, their techniques that are performed every day. As the Dickerson case tells us, in that case, it was about the disappearance of Jimmy Hoffa. They were looking for 20 years' worth of records from the FBI in that case. And even though it's a federal court case, it is persuasive here. And when you look at it, it's very similar to this case in that there were four volumes of FBI records, and they didn't turn over any of those records because at this point, they can't categorize and decide specifically which documents contained within the Dickerson case file would, in fact, harm the investigation. Similar with Brown's Chicken, in that case, it was a civil case that came in for the family members of one of the victims. And at that time, no one had been named or charged in the Brown's Chicken case. However, years later, because they did not turn over those files, they were able to go on and prosecute that case, finish their investigation, and someone was actually convicted in those Brown's Chicken murders several years after that request was made for documents. So we believe that the court properly relied on the most factually similar cases here, Dickerson v. Department of Justice and Brown's Chicken, in making its decision. I have one question I should have asked Mr. Murdock, but you can hear me. You can tell her the answer. In the Chief's declaration and in ASAP's, they both talked about how many documents there were and kind of said it was a burden to go through all of them. Why didn't anybody do a 3G? Well, I know that our office has gone through all of the records and I'm sure that Kenilworth over time has gone through it. I'm not sure if they laid that out specifically in the affidavits. I meant to claim that it was just too burdensome to do this. I mean to compare what Mr. Kelly, that's the gentleman's name, what he wanted the records for as opposed to the burden on these organizations to give that material to. I agree with you. It is a huge burden to ask to turn over all of those documents. I'm saying why didn't anybody claim it? I think because of the ongoing investigation exception, as well as the state's attorney has another exception, in that the prosecution of the case, I think they think those are more significant and substantial protections that are offered here. Was D1 in your cross-motion for summary? It's in our appeal. I'm not sure if it's in our cross-motion for summary judgment as I stand here right now. Okay. I assume that it is. Your Honor, over time, in 50 years, there's going to be advances in technology. There's going to be things that didn't seem significant before that need to be looked back in detail. And I believe as you look through all the records, there are significant details in there that help with this investigation. The trial court took it upon itself to do both suspenders here, if the adversarial argument that's put forth by Mr. Topic is ridiculously flawed in this case. FOIA, unlike common law, specifically delineates for you different exceptions and privileges that allow for people to keep records as protected. When you're looking at the balance between law enforcement's right to privacy and then its investigation versus an individual, government agencies properly assert those specific privileges here. The court had an opportunity and took that opportunity to test those, even asking for more specific affidavits, bringing those in, examining them in camera. She looked at affidavits from Chief Miller, the state's attorney's office, the ME's office, the family of the victim in this case. And after looking for and receiving all of those details, she still went on to make sure that she was satisfied and asked for almost 1,000 pages worth of documents from Kenilworth and then reviewed those as well. So I believe that the adversarial testing argument from Mr. Topic is the red herring here. Does the Court have any more questions? With that, Your Honors, I respectfully ask the Court to affirm the judgment in this case and the assembly judgment. Thank you very much. Thank you. Good morning, Your Honors. And may it please the Court, also I'm Assistant Attorney General Evan Segal for the Illinois State Police. Your Honors, there are two independently sufficient reasons to affirm the circuit court. I'm going to focus on one, and that's the ongoing investigation of the State Police. As you noted, Justice Lamkin, we have been actively involved in the investigation as recently as the fall of 2016. Not too long before the circuit court's decision. We know that from the affidavit of Dana Pitchford, a forensic scientist, who has been working on this case since around the year 2000. And I want to correct some inaccuracies that counsel suggested. The State Police was the lead investigative arm from 1966 until 2002. But Ms. Pitchford's work on this matter extends from 2000 until September of 2016. She has worked on and off to conduct forensic analysis. And the affidavit, as I'm sure the Court has reviewed, the redacted version, reflects that from March to September of 2016, she conducted forensic testing. Now, the State Police works with different municipalities and jurisdictions all around the state. Not every one of them has their own forensic testing lab. We support our partners in their criminal investigations, and that's a role that we've played here. In her nearly 20 years on this matter, Pitchford generated records and reports that we produced to Kenilworth and to our other partners. And that's one facet of the overall total comprehensive investigative file maintained by the State Police. As mentioned, we were the lead investigative agency for nearly 36 years until 2002. Our records as of 2016 totaled around 2,000 pages, and they span six different categories which are reflected in the record, including the forensic tests and reports generated two falls ago. Our records also include documents that we have shared with and obtained from Kenilworth, the Chicago Police, the Cook County Medical Examiner, and the Federal Bureau of Investigation. These records contain the names, as you heard earlier, of confidential sources and information that was provided to this team of investigators and prosecutors, and that is assuredly not in the public domain. And this information, particularly found in the Pitchford affidavit, reflects an ongoing current investigation that suggests our file, that allows us to claim the exemptions of 4A, Section 71, D1, and 7. Any release, it's our position, would compromise this ongoing investigation. And Mr. Kelly has provided no countervailing evidence to call into question the established fact that the State Police is conducting an ongoing investigation as of spring to fall of 2016. I don't want to spend a lot of time on my second independent basis for affirming the circuit court because the court has already indicated that the recipient of the request argument is not a very powerful one advanced by Mr. Kelly. We will rest on our briefs on that issue. I just want to say this. I'm not aware of any case law that holds that our different organizational divisions are separate bodies for purposes of FOIA. I thought I was just one kid. Yes, Your Honor. There's a State Police statute. There are two different State Police statutes, which we cite in our brief. And they talk about the organization of the State Police into different divisions. But the theory here, first of all, Ms. Pitchford is an employee of the State Police. She happens to work in the forensic unit, but her work is not cabined off from contact with other colleagues. Her documents are not shared with other colleagues in other departments. And this fear that you can just sort of like find the soft underbelly of a number of different statewide agencies and pick one off because it's not currently actively investigating, whatever that means, is untenable. It would mean, in essence, that an agency division that is solely responsible for storing the documents could be the recipient of requests but not conduct an investigation. Also, the theory here that Mr. Kelly is advancing changes the meaning of the statute and imposes words that the General Assembly did not provide. There's nothing in the exemption provision anywhere that says that one particular agency must be the lead agency or the chief agency or the sole investigating agency at any particular time. Criminal investigations wax and wane in this case over five decades, to be sure. But just because, you know, by the same reasoning, a lawyer isn't working for eight hours on one particular appeal doesn't mean it's not a current and active appeal on her docket. So with that said, if there are any questions, we would ask the court to refer them to the circuit court. Thank you. Thank you. Bernal, please. Can I get you to focus on an issue? You say that each division of the state police is a separate public body in site to a case called Board of Regents, which held that a subsidiary public body is itself a public body. Right. Who are the two public bodies involved in the Board of Regents? I don't know the answer to that. I'm sorry. There is a whole series of Supreme Court cases that have decided for whatever reason the University of Illinois is separate from the state of Illinois. Right. And it is a subsidiary public body. Yes. But what's to suggest that one division within the state police is a separate public body and the state police is separate? Well, in Dunkey, this court held that the Chicago Police Department is its own subsidiary public body, you know, other than the city of Chicago. It occurs to me a public body is a term of art. I mean, it's a body politic. It's a municipal corporation. It is something that's created by statute. It's not departments within the public body. I can pull away. I believe it says divisions or departments. No, I understand that. But your argument is each division within the Illinois State Police is a separate public body. And I'm looking for something that justifies that because I don't think the Board of Regents does. I think Dunkey, again, is the case that most closely would align here. And I guess there could be an argument that divisions versus departments, maybe there's some reason that Chicago Police Department is. I mean, it occurs to me that if you serve the FOIA request on the Chicago Police Department, it's the city of Chicago that's going to respond to this. It's the Department of Police that gives you the documents. That's not actually how it works. You can't make a FOIA request to the city of Chicago. You can only make a FOIA request to the individual departments. They have the records. And if you guess the wrong one, then you have to try again. So it has sort of played out that different departments and divisions are treated differently. Are you trying to figure out what's a subsidiary public body and for what? I mean, you're not the only one here. Myself included. I think that's something that's continuing to evolve. I think the core issue here really is their claim that there is essentially a blanket exemption over all investigatory records and that they don't even really have to dig in category by category. So we think the proper result here is you should remand the case, and there should be a process by which the court's at the very least going through the categories. And I think the categories are a little too broad, but I think on remand we can flesh it out to try to make them more specific in a manner that's consistent with FON. But it clearly is the case that there is not a blanket exemption for all investigatory records in an open investigation. That's the statute in Indiana, for example, and if the General Assembly wanted that, they could. Dickerson is very different because it relied on different federal exemption language. They used this phrase, could reasonably be expected to interfere, as opposed to would obstruct. And that actually has a history in federal statutory revisions that Dickerson talks about, and that's covered in depth by the dissent, which is very well reasoned. And in Bonin, for example, the Second Circuit said, the classification of information as law enforcement or investigatory does not necessarily foreclose access unless it can be shown in a particular case that disclosure would interfere with law enforcement. In the federal system, a federal trial judge, a district court judge, has the ability to appoint special masters. Yes. And that special master can be charged with the responsibility of going through 20,000 documents and issuing a report to which the trial judge. Yes. Our circuit judges don't have that power. They can't appoint somebody. Do you actually expect a circuit judge to sit down and look through 20,000 documents? Well, I mean, the answer is probably not. But I think if we're able to get into more specific categories, some of these can maybe be dealt with at a categorical level, and it's possible that an affidavit that has more public details about those particular categories and tries to walk through it. Again, reject John Doe's name or John Jones's name, but you can still give us some of the details surrounding it. I think there's a lot of things we can work through to alleviate it. I certainly understand and have never at any point expected that the court is going to necessarily look at all 20,000 documents. I think we can handle it either through truly representative sampling. Anderson, I think all the documents were examined, were they not? No, I don't believe that they were. They relied on an affidavit and they relied on like a packet of information that established that the investigation was ongoing, and then they relied on the federal kind of more or less blanket rule for investigatory records based on the specific statute under federal law. Okay. Thank you. Counsels, thank you. The matter will be taken under advisement. The court is adjourned.